United States District Court
Southern District of Texas
**ENTERED**
July 25, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JASON FREEMAN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-72 |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross-motions for summary judgment. Based on the pleadings; the motions, responses, and replies; the applicable law; and the arguments of counsel, the Plaintiff's motion for summary judgment (Dkt. 19) is **DENIED;** the Defendant's original motion for summary judgment (Dkt. 28) is **DENIED as moot**; and the Defendant's amended motion for summary judgment (Dkt. 52) is **GRANTED**. The reasons for the ruling are explained below.

## Background

### A. The Property

The real property at issue is located at 74 Chervil Common, Lake Jackson, Texas 77556 (the "Property"). Glenda R. Pierce purchased the Property in 1999. In 2003, Pierce executed a Deed of Trust with the Defendant, Wells Fargo, N.A. ("Wells Fargo"). In 2015, a state court ordered the Property to be sold at auction.[1] On November 3, 2015,

[1] This order was made pursuant to the Article IV, Section VII of the Briarwood Homeowners Association's Declaration of Covenants. This Section allowed the Association to foreclose its lien upon the property for unpaid association assessments. Dkt. 20, p. 29. *See* also Dkt. 1-5, p.

Plaintiff Jason Freeman[2] ("Freeman") purchased the property at a Sheriff's Sale for $5,100. The purchase was recorded in a Brazoria County Deed Under Order of Sale. A month later, the Briarwood Homeowners Association sent a Notice of Right of Redemption to, inter alia, Pierce and Wells Fargo. Dkt. 1-5, p. 10.

Three months later, Wells Fargo issued a Notice of Acceleration and Notice of Trustee's Sale on the property (together, the "Notice"). The Notice stated that the Deed of Trust was formed in November 2003 and that Glenda R. Pierce was the grantor. Dkt. 1-5, p. 22. Wells Fargo scheduled the property sale for March 1, 2016.

**B. The Litigation**

On the date of sale, Freeman filed Plaintiff's Amended Petition and Application for Temporary Restraining Order in the 412th Judicial District Court of Brazoria County, Texas. Dkt. 1-7. The Petition asserted claims for wrongful foreclosure and suit to quiet title against Wells Fargo.[3] Freeman sought declaratory and injunctive relief, arguing that he was a bona fide purchaser with a superior claim to title. The court granted a

---

17, Amended Notice of Sheriff's Sale ("WHEREAS, by virtue of an Order of Sale issued out of the 239th District Court of Brazoria County, Texas, on the 13th day of August, 2015, in Cause No. 77550-CV, where Briarwood Homeowners Association was/were Plaintiff, and Glenda R. Pierce was/were Defendant on a judgment rendered in said Court on May 26, 2015, against Defendant and in favor of the said Plaintiff, for a lien foreclosure for the sum of $5,000.00 with interest ….").

[2] Freeman purchased the property as Trustee of FIG Trust, 10223 Broadway, Suite P230, Pearland, Texas 77584.

[3] The wrongful foreclosure claim was later dismissed with prejudice on a joint motion from the parties. The instant suit to quiet title action is the sole remaining claim. Dkts. 15, 16.

Temporary Restraining Order. Dkt. 1-8. Wells Fargo then removed the case to this Court. Dkt. 1.

The parties filed cross-motions for summary judgment. The parties' motions contained evidence cataloguing the Property's protracted ownership history:[4]

- Declaration of Covenants, Conditions and Restrictions, Briarwood Subdivision, Section II. Dkt. 20-1. The subdivision common area is described as "All of Section II, less and except Block One (1) through Eight (8), both inclusive, of Briarwood Subdivision, City of Lake Jackson, Brazoria County, Texas, according to the map or plat thereof duly recorded in the Office of the County Clerk of Brazoria County, Texas, reference to which is here made for all purposes." Filed in the Official Public Records of Brazoria County, Texas on April 24, 1974, in Vol. 1201, Page 134. Dkts. 20-1; 30-A.

- General Warranty Deed from Charles F. Vignal to Brooke Burnham. The lot is described as follows: "Lot 1, Block 2, of the BRIARWOOD SUBDIVISION, SECTION TWO (2), a subdivision in the city of Lake Jackson, Brazoria County, Texas, according to the map or plat thereof recorded in Volume 13, Page 71 of the Plat Records of Brazoria County, Texas." Filed in the Official Public Records of Brazoria County, Texas on March 17, 1988, as Instrument 88-524760. Dkt. 20-2.

- General Warranty Deed from Brooke Burnham to Glenda R. Pierce. Pierce produced a promissory note from the CIT Group/Consumer Finance, Inc. ("CIT"). The lot is described as follows: "Lot 28, in Block 8, of Area "G", CITY OF LAKE JACKSON, a subdivision in Brazoria County, Texas, according to the map or plat thereof, recorded in Volume 4, Page 163 of the Plat Records of Brazoria County, Texas." Filed in the Official Public Records of Brazoria County, Texas on October 28, 1999, as Instrument 99-048799. Dkts. 20-3; 30-B. A subsequent Correction General Warranty Deed from Brooke Burnham to Glenda R. Pierce described the lot as follows: "Lot 1, in Block 2, of Replat of BRIARWOOD SUBDIVISION, SECTION TWO (2), a subdivision in Brazoria County, Texas, according to the map or plat thereof, recorded in Volume 13, Page 71 of the Plat Records of Brazoria County, Texas." Filed in the Official Public Records of Brazoria County, Texas on January 12, 2000, as Instrument 00—001475. Dkts. 20-4; 30-C.

- The Deed of Trust and Security Agreement between Pierce and CIT described the property as "74 Chevell Common Lake Jackson, TX 77566. It then directed the reader to "SEE ATTACHED LEGAL DESCRIPTION ("EXHIBIT A"), which stated

[4] These events are listed in the order in which they were signed.

"Lot 1, in Block 2, of Replat of BRIARWOOD SUBDIVISION, SECTION TWO (2), a Subdivision in BRAZORIA County, Texas, according to the map or Plat thereof recorded in Volume 13, Page 71 of the Plat Records of BRAZORIA County, Texas. Property Address: 74 Chervil Common, Lake Jackson, Texas 77566, Brazoria County." Filed in the Official Public Records of Brazoria County, Texas on October 28, 1999 as Instrument 99-048800. Dkts. 20-5; 30-D.

- An Assignment of Mortgage from CIT to Pierce described the lot as follows: "74 CHEVELL COMMON, LAKE JACKSON, TX 77566 (See original mortgage/deed of trust for legal description): Exhibit A: Lot 1, in Block 2, of Replat of BRIARWOOD SUBDIVISION, SECTION TWO (2), a Subdivision in BRAZORIA County, Texas, according to the map or Plat thereof recorded in Volume 13, Page 71 of the Plat Records of BRAZORIA County, Texas. Property Address: 74 Chevril Common, Lake Jackson, Texas 77566, Brazoria County." Signed on January 13, 2000. Filed in the Official Public Records of Brazoria County, Texas on April 23, 2001 as Instrument 01-016489. Dkts. 20-6; 30-E.

- A Deed of Trust between Pierce and Wells Fargo ("The Deed"). At issue in this dispute is the sufficiency of this Instrument. The Property is described as follows: "Legal Description is Attached Hereto as Schedule "A" and Made a Part Hereof. Parcel ID Number: 74 CHEVELLE COMMONS, LAKE JACKSON, TEXAS 77566, BRAZORIA." Schedule A was not attached to this Instrument. It did have an attached Prepayment Rider, which described the Property as: "74 CHEVELLE COMMONS, LAKE JACKSON, TX 77566." The Deed was filed in the Official Public Records of Brazoria County, Texas on December 5, 2003 as Instrument 03-076852. Dkts. 20-7; 30-F.

- A Final Default Judgment from the 239th Judicial District Court of Brazoria County, Texas in favor of Plaintiff Briarwood Homeowners Association against Defendant Pierce. The Property was described as: "Lot 1, in Block 2, of Replat of Briarwood Subdivision, Section Two (2), a subdivision in Brazoria County, Texas, according to the map or plat thereof recorded in Volume 13, Page 71 of the Plat Records of Brazoria County, Texas, commonly known as 74 Chevril Common, Lake Jackson, Texas ("the Property")." Cause No. 77500-CV. Entered on May 26, 2015. Filed in the Official Public Records of Brazoria County, Texas on June 26, 2015 as Instrument 2015028862. Dkts. 20-9; 30-G.

- A Deed Under Order of Sale from the Sheriff of Brazoria County describing the Property as "Lot 1, in Block 2, of replat of Briarwood Subdivision, Section Two (2), a subdivision in Brazoria County, Texas, according to map and plat thereof recorded in Volume 13, Page 71, of the Plat Records of Brazoria County, Texas more commonly known as 74 Chervil Common, Lake Jackson, Texas.." Signed on January 20, 2016.

Filed in the Official Public Records of Brazoria County, Texas on January 27, 2016 as Instrument 2016003832. Dkts. 20-10; 30-H.

- A Notice of Acceleration and Foreclosure from Wells Fargo describing the Property as "Lot One (1) Block Two (2) of Replat of Briarwood Subdivision, Section Two (2), a subdivision in Brazoria County, Texas, according to the map or plat thereof recorded in Volume 13, page 71 of the plat records of Brazoria County, Texas. Reported Address: 74 Chevelle Commons, Lake Jackson, TX 77566." Signed and filed in the Official Public Records of Brazoria County, Texas on January 25, 2016 as Instrument 2016000037. Dkt. 20-12.

- A Warranty Deed from Pierce to Freeman as Trustee of FIG Trust describing the Property as "Lot 1, in Block 2, of Replat of Briarwood Subdivision, Section Two (2) a subdivision in Brazoria County, Texas, according to the map or plat thereof recorded in Volume 13, Page 71 of the Plat Records of Brazoria County, Texas, commonly known as 74 Chevril Common, Lake Jackson, Texas." Signed on February 8, 2016. Filed in the Official Public Records of Brazoria County, Texas on February 10, 2016 as Instrument 2016006090. Dkt. 20-11.

At issue is a defective property address contained in the 2003 deed executed between Pierce and Wells Fargo ("the Deed"). The Deed incorrectly described the Property as "74 Chevell Commons" (instead of "74 Chevril Common"). Additionally, the Deed referred to an attached "Schedule A" legal description. However, there was no attached legal description.

**C. The Parties' Cross-Motions for Summary Judgment**

Freeman's motion argued that the deed in favor of Wells Fargo was void for uncertainty because it lacked both an accurate address and an accurate description. Dkt. 19. Freeman noted that the Deed's incorrect address created confusion because several candidates for the correct address existed. According to Freeman:

> [T]he street address contained in the Deed of Trust is incorrect. The Deed of Trust states that the Property is located at '74 Chevelle Common, Lake Jackson, Texas 77566:' the actual street address of the property is '74 Chervil Common, Lake Jackson, Texas 77566.' Without a legal

> description to clarify the incorrect street address given, there is confusion as to what street address the Deed of Trust applies…. This confusion is compounded by the fact that the incorrect street address is also included on the Notice of Acceleration and Trustee's Sale. Moreover, there are two similar streets in the 77566 zip code area: 'Cayenne Common,' and 'Caraway Common.' There are therefore at least three streets which qualify as substitutes for the stated incorrect address[.]

Dkt. 20, ¶¶ 48-49. He further argued that Wells Fargo was time-barred from seeking to correct the Deed.

Wells Fargo's Response (Dkt. 25) and cross-motions (Dkts. 28, 52) concede that the address on the Deed is incorrect, but maintains that Freeman had both constructive and inquiry knowledge of the prior encumbrance. Such knowledge arose from extrinsic evidence and, according to Wells Fargo, precludes Freeman's status as a bona fide purchaser ("BFP"). According to Freeman, the Court should not look to extrinsic evidence to interpret the Deed because it is facially void.

With leave of the Court, Wells Fargo filed an amended motion for summary judgment. Dkt. 53. Attached to the amended motion was evidence that Wells Fargo had filed a correction affidavit pursuant to Rule 5.028 for the Texas Property Code. Freeman argued again that the correction was time-barred. Freeman further argued that even a timely correction would be improper because the Deed was facially void.

## Standard of Review

The parties' motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule, a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.*

"When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Serna v. Law Office of Joseph Onwuteaka, P.C.,* 614 Fed. App'x 146, 152 (5th Cir. 2015), *cert. denied*, 136 S.Ct. 1160 (2016) (citing *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (per curiam)). The movant discharges this burden by making out "a prima facie case that would entitle [him/it] to judgment as a matter of law if uncontroverted at trial." *Id.* (internal citations omitted).

If the movant succeeds, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). On cross-motions for summary judgment, courts are to consider "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 745 (5th Cir. 2009).

## Discussion

### A. Relevant Law

The parties agree that Texas law governs this dispute. Dkts. 20, ¶ 39; 29, ¶ 18. Under Texas law, a claim to quiet title requires the plaintiff to establish the following elements: "that the defendant (1) created a hindrance to the plaintiff's title, having the appearance of a better right to title than his own, that (2) appears to be valid on its face, and that (3) for reasons not apparent on its face, is not valid." *Ellis v. Buentello*, No. 01-12-00098-CV, 2012 WL 3528009, at *3 (Tex. App.-Houston [1st Dist.] Aug. 16, 2012, not pet.) (mem. op.).

*i. Recording Under the Texas Property Code*

In order to be recorded, an instrument conveying real property must be signed or sworn to by the grantor and certified by an authorized officer. TEX. PROP. CODE § 12.001. A properly recorded instrument provides "notice to all persons of the existence of the instrument." *Id*. at § 13.002. An unrecorded instrument, meanwhile, is void to bona fide purchasers. *Id*. at § 13.001. A bona fide purchaser ("BFP") is one who takes legal title for value and without notice of any infirmities in the title. *Matter of Hamilton*, 125 F.3d 292, 298 (5th Cir. 1997) (citing *Williams v. Jennings*, 755 S.W. 2d 874, 881 (Tex. App.—Houston [14th Dist.] 1988, writ denied)).

BFP status can be destroyed by implied, as well as actual, knowledge of a title's infirmity. *Id*. at 299. Constructive and inquiry notice both constitute implied knowledge. *Id*. Constructive notice arises from a properly recorded instrument and is charged all

persons as a matter of law. *Id*. On the other hand, inquiry notice arises when "notice of facts … would put a reasonably prudent person on a duty of inquiry." *Id*.

*ii. Sufficiency of the Property's Description*

Under the Texas Business and Commerce Code, a contract for the sale of real estate is not enforceable "unless the promise or agreement, or a memorandum of it, is in writing." TEX. BUS. & COM. CODE. ANN. § 26.01(a)(1) (West 2005). "[Under] the general rules in Texas regarding the sufficiency of the required property description … 'the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty.'" *DTND Sierra Investments LLC v. Bank of N.Y. Mellon Trust Co.*, 958 F. Supp. 2d 738, 747 (W.D. Tex. 2013) (quoting *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 648 (Tex. 2008)).

*iii. Parol Evidence*

Parol evidence is allowed "within certain limitations. The essential elements may never be supplied by parol. The details which merely explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol." *Morrow v. Shotwell,* 477 S.W.2d 538, 541 (Tex.1972) (quoting *Wilson v. Fisher*, 144 Tex. 53, 57 (1945). In *Morrow*, the Supreme Court of Texas found that a deed describing property as "[t]he North acreage (to be determined by a survey)" was insufficient despite the parties' shared understanding of the property's contours. 477 S.W.2d at 541. In *AIC Management*, the Texas Supreme Court found that a property identification of "TR 12," which referenced a Harris County Appraisal District ("HCAD") 'tax tract,' sufficiently

described the property at issue. 246 S.W.3d at 645. The court distinguished the circumstances of the case from those in *Morrow*, noting that "HCAD records are not the type of extrinsic evidence we rejected in that case." *Id*. at 648. In *Hahn v. Love*, the court examined the existing caselaw and noted that even deeds that simply described the property as "My Property" were sufficient "when extrinsic evidence shows that the party owns only one tract of land answering the description." 394 S.W.3d 14, 25 (Tex. App. 2012).

*Hahn* reiterated that "a deed should not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property the parties intended to convey." *Id*. (citing *Teledyne Isotopes, Inc. v. Bravenec*, 640 S.W. 2d 387, 389 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.)). "Every presumption should be indulged to reach the conclusion that some interest should be passed by a deed." *Id*. at 26.

*iv. Corrections of Defects*

Under the Texas Property Code:

> A person who has personal knowledge of facts relevant to the correction of a recorded original instrument of conveyance may prepare or execute a correction instrument to make a nonmaterial change that results from an inadvertent error, including the addition, correction, or clarification of … a legal description prepared in connection with the preparation of the original instrument but inadvertently omitted from the original instrument …."

TEX. PROP. CODE ANN. § 5.028 (West 2013). "Correction instruments "relate back" to the date of the original instrument and become effective as of that date." *Maldonado v. Citimortgage, Inc*., Civil Action No. H-15-120, 2016 WL 6909294, at *3 (S.D. Tex. Mar.

16, 2016) (citing *Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 750 (Tex. 2008)).

**B. Application of Law to the Present Facts**

Wells Fargo argued in its original motion for summary judgment that it could easily correct the defective address description contained in the Deed. Wells Fargo subsequently filed an amended motion for summary judgment. Attached to the amended motion was a Notice of Correction.[5] The instrument was filed and recorded with Brazoria County as Instrument No. 2017025024 on May 23, 2017. Dkt. 53-1, p. 141.[6]

Freeman argues that the time for correcting the deed has long passed, and that any corrections are now barred by the four-year statute of limitations. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.051 (West 2008). Freeman points to *Trahan v. Mettlen* for support. 428 S.W.3d 905 (Tex. App. 2014). In *Trahan*, the parties memorialized the sale and purchase of property with a written agreement. *Id*. at 907. Unlike the sales contract, the properly recorded deed contained a reservation of the seller's mineral rights. *Id*. The buyers brought suit, arguing that they were not aware of

[5] At Docket Call on May 19, 2017, Wells Fargo received leave to pursue a Notice of Correction and amend its motion for summary judgment. Dkt. 49. Docket Call had been scheduled more than eleven months in advance. Dkt. 12. Two days prior to Docket Call, Plaintiff's counsel filed an unopposed motion for a continuance all settings because, inter alia, Plaintiff's counsel would be appearing in a state court trial also scheduled on May 19, 2017. Dkt. 47. Despite receiving no ruling on the motion to continue, Plaintiff's counsel failed to appear at Docket Call. During the hearing, the Court and Wells Fargo's counsel discussed a potential Notice of Correction. Wells Fargo's counsel received leave to file its amended motion for summary judgment.

[6] Freeman's Response also argued that the correction instrument is invalid. As support, Freeman pointed to a signee discrepancy between the correction affidavit (signed by Samuel Lipsitz) and the jurat (signed by Tiffany Gilbert). Dkt. 57, p. 13. However, Wells Fargo corrected this matter with evidence attached to its Reply. Dkt. 60-1. The corrected instrument, containing Lipsitz's signature, was recorded in Nebraska as No. 2017027294 on June 2, 2017.

the deed's reservation of mineral rights. They argued that the four-year statute of limitations did not begin to toll until they became aware of the mutual mistake. *Id*. Accordingly, according to the buyers, they were entitled to reformation of the deed to reflect the parties' intent. *Id*. at 908. Finding no mutual mistake, the court charged both parties with knowledge of the terms. *Id*. at 910. The court therefore declined to toll the statute of limitations and accordingly declined to reform the deed. *Id*.

Here, unlike in *Trahan*, the Court is not considering reformation of the Deed. *See* 7 TEX. JUR. P & PR. FORMS § 112:13 (2d ed.) ("The underlying objective of reformation is to correct a mutual mistake made in preparing a written instrument so that the instrument truly reflects the original agreement of the parties."). Indeed, neither party contends that the Deed did not reflect the intent of Pierce and Wells Fargo. Instead, the Court considers whether Wells Fargo is entitled to correct a non-material mistake contained in the Deed. Under § 5.028, the addition of an inadvertently omitted legal description is expressly subject to later correction. As discussed, this type of non-material correction is not subject to the four-year statute of limitations. Instead, the correction relates back to the date of the original recording. The Court finds that the omission of the correct legal description was a non-material error. The Court further finds that Wells Fargo was entitled to correct the defect contained in the Deed.

Wells Fargo exhibited a puzzling lack of urgency in correcting the Deed's address defect. Nonetheless, the defect has been corrected. The correction was eventually performed in accordance with § 5.028. The correction relates back to the date upon which the Deed was originally recorded. Therefore, the Deed is facially valid. Under §

5.028, the Court views the Deed as having been valid since it was recorded on December 5, 2003. Freeman's arguments are effectively moot in the face of a valid Deed.

Assuming, arguendo, that Wells Fargo did not correct the Deed, Freeman still faced considerable obstacles in pursuing his claim. For example, he argued that the Deed was facially void while at the same time moving for quiet title as his only cause of action. *See Ellis v. Buentello*, No. 01-12-00098-CV, 2012 WL 3528009, at *3 (Tex. App.-Houston [1st Dist.] Aug. 16, 2012, not pet.) (mem. op.) (A Claim to quiet title must "appear[] to be valid on its face [but] for reasons not apparent on its face, is not valid.").

Further, the Court would likely have allowed parol evidence to clarify the essential terms of the deed given the functional requirements of *Hahn* and *AIC Management*. *See* 246 S.W.3d 640, 648 (Tex. 2008); 394 S.W.3d 14, 25 (Tex. App. 2012). Finally, Freeman nonetheless had—at the very least—inquiry notice of the Deed. This is because he had actual knowledge of the parties involved (Pierce and Wells Fargo) as well as reason to inquire further due to the incorrect address and missing legal description. Therefore, Freeman would have likely lost any BFP status and Wells Fargo's lien would remain superior.

## Conclusion

For the reasons discussed above, Freeman's motion for summary judgment (Dkt. 19) is **DENIED**; Wells Fargo's original motion for summary judgment (Dkt. 28) is **DENIED as moot**; and Wells Fargo's amended motion for summary judgment (Dkt. 52) is **GRANTED**.

These rulings dispose of all remaining claims, which are hereby **Dismissed with prejudice**. The Court will separately enter a final judgment in favor of Wells Fargo.

SIGNED at Galveston, Texas, this 25th day of July, 2017.

George C. Hanks Jr.
United States District Judge